UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES ANDREW LOHNES, | |
| Plaintiff, | |
| v. | No. 2:18 CV 307 |
| DR. FORGEY, *et al.*, | |
| Defendants. | |

## OPINION and ORDER

James Andrew Lohnes, a prisoner without a lawyer, is proceeding in this case on three claims. First, he is proceeding "against Dr. Forgey, Dr. Dennison, Nurse Practitioner Dave, Nurse Practitioner Sue, and [Eric Mance, M.A.], in their individual capacities for compensatory damages and in their official capacities for injunctive relief, for deliberate indifference to his shoulder pain from May 2018 until present, in violation of the Fourteenth Amendment[.]" (DE # 4 at 7; DE # 184.) Second, he is proceeding "against Dr. Forgey, in his individual capacity for compensatory damages and his official capacity for injunctive relief, for retaliating against Lohnes by denying him treatment for his shoulder pain from May of 2018 until present because Lohnes filed a previous lawsuit, in violation of the First Amendment[.]" (DE # 4 at 7.) Third, he is proceeding "against Correctional Health Indiana, Inc. for injunctive relief and compensatory damages on his claim that it has a policy or practice of denying necessary medical treatment to save money, in violation of the Fourteenth Amendment[.]" (*Id.*)

The defendants filed a motion for summary judgment. (DE # 191.) Lohnes filed a response. (DE # 220, 224.) The defendants filed a request for an extension of time to file a reply, which the court granted. (DE ## 228, 232.)[1] The court will now rule on the defendants' motion for summary judgment.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

I.   **FACTS**

Lohnes arrived at the Lake County Jail in March 2016. (DE # 193-3 at 2.) As of April 2018, Lohnes was receiving treatment and medication for a number of health

---

[1] The defendants' time to file a reply has not yet expired, but the court concludes it can rule on the summary judgment motion without a reply from the defendants.

2

conditions, including gastroesophageal reflux disease ("GERD"), neck pain, and flank pain associated with kidney stones. (*Id.*) Specifically, Lohnes was receiving Neurontin for his prior complaints of neck pain; an anti-psychotic medication Seroquel; ibuprofen; an anti-anxiety medication Klonopin; a proton pump inhibitor; and an H2 blocker for his GERD. (*Id.*)

On April 6, 2018, Lohnes was seen by Nurse Katherine Mummert Back for complaints of right flank pain. (DE # 193-9 at 1-2.) Nurse Back noted a recent ultrasound study had shown kidney stones, and she ordered tramadol, an opioid-like medication, for the associated pain. (*Id.* at 2; DE # 193-1 at 2-3.) On April 19, 2018, a medical assistant reported observing Lohnes spitting his tramadol and other medications into a cup after receiving the medications. (DE # 193-9 at 2; DE # 193-1 at 7, 9.) Additionally, a note was placed in sick call stating that Lohnes was selling his medication to another inmate. (*Id.*) Based on this information, Nurse Back discontinued the tramadol and sent Lohnes a message informing him that she could not prescribe him medication without being sure he was not providing the medication to someone else. (*Id.*) Lohnes continued to receive ibuprofen until he could see a urologist. (*Id.*)

On April 30, 2018, Lohnes reported right flank pain to Nurse Gayle Elliott. (DE # 193-11 at 1; DE # 193-1 at 14-16.) Nurse Elliott noted Lohnes had received an outside urology evaluation that week for kidney stones. (*Id.*) Nurse Elliott did not believe Lohnes demonstrated clinical indications for tramadol, but she ordered that he receive tramadol twice daily until he could be seen by urology, based on his reported symptoms. (DE # 193-11 at 2; DE # 193-1 at 16.)

3

On May 2, 2018, Nurse Elliott recorded the results of the kidney ultrasound study obtained the previous day, which found "possible tiny bilateral renal stones, no hydronephrosis." (DE # 193-11 at 2; DE # 193-1 at 21.) Nurse Elliott explained to Lohnes that, given the size of the kidney stones, they could not have been causing him pain. (*Id.*) She discontinued the tramadol and instead entered an order for ibuprofen. (*Id.*)

On May 4, 2018, Lohnes was seen by a urologist at an outside clinic and complained of back pain. (DE # 193-4 at 1-2.) The urologist ordered a CT scan of the abdomen and pelvis to further evaluate his pain. (*Id.*)

On May 8, 2018, a medical assistant reported that she caught Lohnes spitting his medication back into his cup and attempting to walk away. (DE # 193-1 at 24.) Later that evening, Lohnes developed an irregular cardiac rhythm and was taken to the hospital. (DE # 193-3 at 3; DE # 193-5 at 2-3.) On arrival at the hospital, Lohnes' cardiac rhythm had returned to normal. (DE # 193-5 at 3.) Lohnes reported to hospital staff he had some nausea and felt like he was having a panic attack, but did not report any other active health complaints. (*Id.* at 8-9.) An examination revealed no joint pain and normal extremities. (*Id.* at 10.) Hospital staff noted Lohnes had previously taken tramadol and entered an order for twelve tramadol tablets. (*Id.* at 7, 12-13.) Upon his return to the jail, Lohnes was given both tramadol and extra-strength Tylenol. (DE # 193-3 at 3.) When the short-term prescription for tramadol lapsed, it was not renewed and Lohnes continued to receive extra-strength Tylenol and Neurontin. (*Id.*)

On May 19, 2018, Lohnes complained of right shoulder pain during a sick call visit. (DE # 193-1 at 31-32.) Lohnes asserted he could not take Tylenol and requested he

4

receive tramadol. (*Id.*) A nurse consulted with Dr. Forgey about Lohnes' request, and Dr. Forgey concluded that Lohnes should remain on Tylenol and Neurontin and should not receive tramadol based on his other health conditions, his prior misuse of tramadol, and the drug's addictive properties. (*Id.* at 32; DE # 193-3 at 3-4.)

On May 21, 2018, Lohnes saw Nurse David Maurer for a sick call visit and complained of right shoulder pain. (DE # 193-1 at 33-35; DE # 193-13 at 2.) Nurse Maurer recorded that Lohnes' vital signs were within normal limits, he did not appear to be in any distress, and he reclined back onto the exam table with both arms resting on top of his head. (*Id.*) Lohnes requested that his Tylenol be switched to ibuprofen, but Nurse Maurer consulted with another nurse and determined that he should remain on Tylenol because ibuprofen could exacerbate his acid reflux. (*Id.*)

On May 22, 2018, Lohnes saw Dr. Dennison regarding his complaints of shoulder pain. (DE # 193-1 at 37-38.) On May 23, 2018, an x-ray was taken of Lohnes' right shoulder and interpreted by a radiologist. (*Id.* at 39; DE # 193-15.) The radiologist noted that there was "no significant degenerative changes" and "no bone abnormality to suggest a recent fracture or dislocation." (DE # 193-15.)

On May 24, 2018, a medical assistant again reported observing Lohnes spitting his medication back into his cup. (DE # 193-1 at 43.)

On May 29, 2018, Dr. Dennison saw Lohnes for a follow-up visit and they reviewed the results of his shoulder x-ray. (DE # 193-1 at 45-46.) Lohnes continued to complain of shoulder pain radiating down to his fingertips, so Dr. Dennison recommended an orthopedic referral. (*Id.* at 46.) Jail staff contacted an outside

5

orthopedic surgeon that same day to schedule an appointment, and Lohnes was scheduled for the first available appointment on July 10, 2018. (*Id.* at 44-45.)

Between May 2018 and June 2018, while Lohnes awaited his orthopedic appointment, he continued to complain of shoulder pain and request tramadol. (DE # 193-13 at 2-3; DE # 193-3 at 3-4.) Dr. Forgey instructed the medical staff to keep Lohnes on Tylenol and Neurontin because he believed long-term use of tramadol was contraindicated given Lohnes' GERD and history of hepatis C. (DE # 193-3 at 3-4.)

On June 1, 2018, Nurse Susan Ciesielski saw Lohnes for a sick call visit concerning complaints of numbness and tingling in his right arm, numbness in some of his fingers, and pain in his shoulder area that was shooting down his back. (*Id.* at 52-53; DE # 193-16 at 1-2.) Nurse Ciesielski did not believe Lohnes needed tramadol because it is not effective in addressing nerve pain, so she entered a request that Lohnes receive ibuprofen for his pain. (DE # 193-16 at 2.) Nurse Ciesielski later discussed the order with Dr. Forgey who informed her that long-term use of either ibuprofen or tramadol was inadvisable because of Lohnes' ongoing GERD and past issue with hepatitis C. (*Id.* at 2-3.) On June 3, 2018, Nurse Ciesielski relayed this information to Lohnes and he continued to receive extra-strength Tylenol and Neurontin for pain. (*Id.*; DE # 193-1 at 56.)

On June 12, 2018, Lohnes saw Nurse Maurer for a sick call visit and reported numbness and tingling in his right arm. (DE # 193-1 at 59-61; DE # 193-13 at 4.) Nurse Maurer examined him and noted that he had full range of motion and his vital signs

were within normal limits. (*Id.*) Nurse Maurer ordered a referral to the clinic so Lohnes' concerns could be addressed by an advanced level provider. (*Id.*)

On June 13, 2018, Lohnes saw Dr. Dennison for a follow-up visit. (DE # 193-1 at 62-64.) Dr. Dennison reiterated that Lohnes had an appointment scheduled with an orthopedic surgeon on July 10, 2018, and again provided Lohnes with extra-strength Tylenol and Neurontin in the interim. (*Id.*)

On July 10, 2018, Lohnes attended a consultation with an outside orthopedic surgeon. (DE # 193-6.) Lohnes reported persistent shoulder pain and right arm pain with numbness and tingling in the middle fingers of his right hand. (*Id.* at 1.) On examination, the orthopedic surgeon found that Lohnes' right shoulder was stable with no tenderness to palpation, full range of motion, and full strength. (*Id.* at 3.) However, a Spurling test was positive for a cervical spine problem. (*Id.*) The orthopedic surgeon ordered an MRI of the cervical spine and prescribed 30 tablets of tramadol for pain management in the interim. (*Id.* at 4, 9.)

Lohnes was scheduled to undergo an MRI of the cervical spine on July 30, 2018, which was the first available date he could be scheduled. (DE # 193-3 at 5; DE # 193-1 at 68.) On July 17, 2018, Dr. Forgey met with Lohnes, who expressed anger at not receiving the MRI and tramadol ordered by the orthopedic surgeon. (DE # 193-3 at 5; DE # 193-1 at 70.) Dr. Forgey informed Lohnes the MRI had been ordered but he would not receive tramadol because he had misused it in the past and turned it into contraband. (*Id.*)

On July 30, 2018, Lohnes underwent an MRI of his cervical spine. (DE # 193-1 at 73; DE # 193-3 at 5.) The MRI found moderate to severe right foraminal narrowing at

7

the C5-C6 and C6-C7 levels, with degenerative changes most significant at C6-C7. (DE # 193-7.) On July 31, 2018, Dr. Forgey reviewed the MRI report and requested a referral for Lohnes to see an orthopedic spine specialist. (DE # 193-1 at 74; DE # 193-3 at 5.) Lohnes was scheduled for the first available appointment on August 30, 2018. (*Id.*) In the meantime, he continued to receive extra-strength Tylenol and Neurontin for pain. (*Id.*)

On August 30, 2018, Lohnes was seen by an orthopedic spine specialist. (DE # 193-8.) After examining Lohnes and reviewing his MRI results, the spine specialist recommended that Lohnes receive a Medrol Dosepak to alleviate his inflammatory symptoms and be started on a physical therapy regimen for his lumbar and cervical spine. (*Id.* at 3-5.)

On September 5, 2018, Dr. Forgey received the treatment recommendations from the orthopedic spine specialist. (DE # 193-3 at 6.) Dr. Forgey endorsed the Medrol Dosepak medication and added it to Lohnes' existing medications. (*Id.*) However, Dr. Forgey noted that it was impractical to transport Lohnes from the jail three days a week to receive physical therapy, and instead recommended to the spine specialist that Lohnes be instructed to perform self-administered therapeutic exercises. (*Id.*) The orthopedic specialist approved of this approach and a nurse provided Lohnes with a list of self-administered therapeutic exercises for his spine. (*Id.*; DE # 193-11 at 3.) After that time, Lohnes continued to have complaints about neck pain, but no longer had any complaints of shoulder pain. (DE # 193-3 at 6.) He was transferred out of the Lake

County Jail and into the Indiana Department of Corrections system on June 19, 2020. (*Id.*)

## II. ANALYSIS

1. <u>Fourteenth Amendment claim against Dr. Forgey, Dr. Dennison, Nurse Dave, Nurse Sue, and Eric Mance, M.A.</u>

Lohnes is proceeding "against Dr. Forgey, Dr. Dennison, Nurse Practitioner Dave, Nurse Practitioner Sue, and [Eric Mance, M.A.], in their individual capacities for compensatory damages and in their official capacities for injunctive relief, for deliberate indifference to his shoulder pain from May 2018 until present, in violation of the Fourteenth Amendment[.]" (DE # 4 at 7.)

"[M]edical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley* [*v. Hendrickson*, 576 U.S. 389 (2015)]." *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). The first consideration is "whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case." *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018) (quotation marks, brackets, and citations omitted). Then, the court considers "whether the challenged conduct was objectively reasonable," based on the totality of the facts and circumstances. *Id.*

Here, it is undisputed that the defendants treated Lohnes' chronic shoulder pain by regularly examining him, providing him pain medications including Neurontin and extra-strength Tylenol, referring him to orthopedic specialists, and implementing the

9

treatment recommendations of the orthopedic specialists by providing him a Medrol Dosepak and therapeutic exercises to treat the underlying source of his pain. The defendants argue summary judgment is warranted in their favor because this treatment was objectively reasonable. (DE # 192 at 4-10.) Lohnes responds by arguing that this treatment was unreasonable for several reasons.

First, Lohnes argues that the defendants acted unreasonably by repeatedly denying his requests for tramadol and instead providing him Neurontin and extra-strength Tylenol for his chronic shoulder pain. (DE # 220 at 12, 22-26, 32-35, 40, 54-57.) However, Lohnes' belief that he should have received tramadol does not demonstrate a Fourteenth Amendment violation, as "a mere disagreement with a medical professional's otherwise reasonable treatment is not a basis for a constitutional claim." *Williams v. Patton*, 761 F. App'x 593, 597 (7th Cir. 2019) (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Lohnes argues that it was unreasonable to provide him extra-strength Tylenol for pain relief because a nurse informed him in November 2016 that he should avoid taking Tylenol due to his Hepatitis C. (DE # 220 at 12, 34-36, 51; DE # 220-1 at 8.) However, the fact that a nurse advised Lohnes to avoid Tylenol in November 2016 does not demonstrate that it was unreasonable for his physicians to prescribe him Tylenol almost two years later for an unrelated condition. Similarly, Lohnes argues it was unreasonable to provide him Neurontin for pain relief because he was already taking Neurontin as a mental health medication before he arrived at Lake County Jail and it "is not a strong neuropathic pain reliever." (DE # 220 at 14-15, 21, 44.) However, the fact Lohnes previously took Neurontin for his mental health does not show that it

10

was unreasonable for the defendants to continue providing the medication for its pain relieving properties, as studies have found Neurontin can provide good levels of relief for adults with chronic nerve pain. *See Gabapentin for chronic neuropathic pain in adults*, available at https://pubmed.ncbi.nlm.nih.gov/28597471/ (last accessed June 22, 2022). Thus, because Lohnes has not shown that the defendants acted unreasonably by providing him Neurontin and extra-strength Tylenol for his chronic shoulder pain, his belief that he should have received tramadol does not establish a constitutional violation.

Additionally, the undisputed evidence shows that the defendants had legitimate medical reasons for denying Lohnes' tramadol requests. Specifically, Dr. Forgey attests it was inadvisable to treat Lohnes' chronic pain with tramadol due to his GERD and history of Hepatitis C. (DE # 193-3 at 4.) Lohnes responds his Hepatis C was not active during the relevant time period (DE # 220 at 42-43), but there is no evidence that it was unreasonable for Dr. Forgey to consider Lohnes' history of hepatis C in determining whether long-term use of tramadol was appropriate. Dr. Forgey also attests that he denied Lohnes' tramadol requests because Lohnes had previously misused the medication, as various medical assistants had observed him spitting out and attempting to walk away with his pills. (DE # 193-3 at 4-5.) Lohnes admits he did sometimes spit out his medication but argues that he did so not to misuse the medication but because he was afraid certain nurses were trying to harm him by providing the wrong pills. (DE # 220 at 15, 19, 38-40.) However, regardless of Lohnes' subjective reason for spitting out his medication, Dr. Forgey could have reasonably believed that Lohnes intended to

11

misuse his tramadol. Thus, the undisputed evidence shows that the defendants had reasonable medical reasons for denying Lohnes' requests for tramadol.

Next, Lohnes argues that the defendants acted unreasonably because various medical staff made inappropriate comments indicating that they would not treat his chronic shoulder pain. For example, Lohnes alleges Nurse Ciesielski told him "we could treat you for the pain" but "we're not going to," and that he should try wiggling his head to make the pain go away. (DE # 220 at 49-50.) Similarly, he alleges Dr. Dennison told him that he had been instructed by Dr. Forgey not to provide any treatment for his chronic pain. (*Id.* at 52-53.) However, even assuming the defendants made these statements, the objective-reasonableness standard considers only the actions taken by the defendants and does not take into account their subjective statements and beliefs. *See McCann*, 909 F.3d at 886 (holding that the objective-reasonableness standard "requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable"). Because it is undisputed that the defendants provided Lohnes treatment for his chronic shoulder pain, any subjective statements they made are not relevant to the objective-reasonableness inquiry.

Lastly, Lohnes argues at length that the defendants acted unreasonably because they altered and reduced his prescriptions for anti-depressant and anti-anxiety medications. (DE # 220 at 6-20, 27-31.) But these medications relate to Lohnes' mental

health conditions, and he does not explain how these medications are relevant to his claim that the defendants provided unreasonable care for his chronic shoulder pain.

Accordingly, the undisputed evidence shows that the defendants reasonably treated Lohnes' chronic shoulder pain by regularly examining him, providing him Neurontin and extra-strength Tylenol, referring him to orthopedic specialists, and implementing the treatment recommendations of the specialists. Lohnes provides no evidence by which a reasonable jury could conclude that this treatment was objectively unreasonable. Thus, summary judgment is warranted in favor of Dr. Forgey, Dr. Dennison, Nurse Practitioner Dave, Nurse Practitioner Sue, and Eric Mance, M.A., on Lohnes' Fourteenth Amendment claims for both compensatory damages and injunctive relief.[2]

### 2. *First Amendment claim against Dr. Forgey*

Lohnes is proceeding against Dr. Forgey "in his individual capacity for compensatory damages and his official capacity for injunctive relief, for retaliating against Lohnes by denying him treatment for his shoulder pain from May of 2018 until present because Lohnes filed a previous lawsuit, in violation of the First Amendment[.]" (DE # 7 at 4.) Specifically, Lohnes argues that Dr. Forgey denied his requests for tramadol and refused to provide him with adequate treatment for his

---

[2] Summary judgment is alternatively warranted on Lohnes' injunctive relief claims because it is undisputed that Lohnes was transferred into the Indiana Department of Corrections' system in June 2020 and he has provided no evidence that he will be transferred back to the Lake County Jail. *See* DE # 193-3 at 6; *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988) (holding that, if a prisoner is released or transferred to another prison after he files a complaint, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred).

13

shoulder pain in retaliation for a lawsuit he previously filed against two nurses. (DE # 220 at 4, 26, 32, 55.)

An allegation of First Amendment retaliation requires the plaintiff to show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted).

Here, the undisputed evidence shows that Dr. Forgey provided Lohnes with reasonable medical care for his chronic shoulder pain and had valid medical reasons for denying his requests for tramadol, as discussed above. Thus, there is no evidence by which a reasonable jury could conclude that Dr. Forgey's treatment of Lohnes' chronic shoulder pain constituted a "deprivation that would likely deter First Amendment activity in the future." *See id.* Summary judgment is thus warranted in favor of Dr. Forgey on this claim.

    3. <u>Fourteenth Amendment claim against Correctional Health Indiana, Inc.</u>

Lohnes is proceeding against Correctional Health Indiana on a *Monell*[3] claim "for injunctive relief and compensatory damages on his claim that it has a policy or practice of denying necessary medical treatment to save money, in violation of the Fourteenth Amendment[.]" (DE # 4 at 7.)

---

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

A private company performing a state function, such as Correctional Health Indiana, can be held liable to the same extent as a municipal entity under *Monell*. *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). Under *Monell*, a municipality may only be held liable for constitutional violations caused by the municipality through its own policy, practice, or custom. *Monell*, 436 U.S. at 694. To recover under *Monell*, a plaintiff must establish that: (1) he suffered a deprivation of a federal right; (2) as a result of an express municipal policy, a widespread custom, or a deliberate act of a decision-maker with final policymaking authority for the municipality that; (3) was the proximate cause of his injury. *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). Thus, "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield Ill.*, 630 F.3d 499, 504 (7th Cir. 2010).

Here, there is no evidence by which a reasonable jury could conclude that (1) Correctional Health Indiana has a policy, practice, or custom of denying necessary medical treatment to save money, or (2) Lohnes suffered a deprivation of a federal right as a result of that policy. *See King*, 763 F.3d at 649; *Sallenger*, 630 F.3d at 504. Instead, the evidence shows that the defendants provided Lohnes with reasonable medical treatment for his shoulder pain, as discussed above. Because the defendants did not violate Lohnes' Fourteenth Amendment rights, Correctional Health Indiana cannot be held liable under *Monell*. *See Sallenger*, 630 F.3d at 504. Moreover, even assuming the defendants denied Lohnes necessary medical treatment by refusing to provide him

15

tramadol, Lohnes offers no evidence that the defendants were acting pursuant to any policy, practice, or custom of Correctional Health Indiana. Specifically, Lohnes argues Dr. Forgey denied him access to tramadol in retaliation for his filing of lawsuits, not to save money on medical expenses. Accordingly, no reasonable jury could conclude that any policy, practice, or custom of Correctional Health Indiana caused Lohnes a constitutional injury. *See id.* Summary judgment is thus warranted in favor of Correctional Health Indiana on this claim.

For these reasons, the court:

(1) **GRANTS** the defendants' motion for summary judgment (DE # 191) in its entirety; and

(2) **DIRECTS** the Clerk to enter judgment in favor of the defendants and against James Andrew Lohnes and to close this case.

**SO ORDERED.**

Date: June 29, 2022

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT